IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
------------------------------------------------------  :
LEE HUGHLETT,                                          : CASE NO.  1:04 CV 01821
                                                       :
                               Plaintiff,              :
                                                       :
                -vs-                                   : MEMORANDUM OF OPINION AND
                                                       : ORDER GRANTING DEFENDANT'S
                                                       : MOTION FOR SUMMARY JUDGMENT
OGLEBAY NORTON MARINE                                  :
SERVICES CO., LLC,                                     :
                               Defendant.              :
------------------------------------------------------  :
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 12 December 2003, Lee Hughlett ("Mr. Hughlett") brought the instant personal injury case against Oglebay Norton Services Co., LLC ("Oglebay") raising claims of negligence and unseaworthiness arising out of an injury that allegedly occurred while he was pulling mooring cable on one of Oglebay's vessels.  (Docket No. 1).

On 12 May 2006, Oglebay filed a motion for summary judgment.  (Docket No. 28).  Mr. Hughlett filed a timely responsive brief (Docket No. 29) and Oglebay submitted a reply.  (Docket No. 30).

For the reasons discussed below, Oglebay's motion for summary judgment is granted and this action is dismissed as a matter of law.

## I. FACTUAL BACKGROUND

The facts of this case are not in material dispute. Mr. Hughlett was an experienced seaman who worked most of his years between 1976 and 2001 with Olgebay. (Hughlett Depo., at 11-12; 20). During that time, he worked as a deck hand, porter, drag tender, watchman, wiper, and steward. Id. at 15-17; 31; 35-36.

On 2 July 2001, the *Middletown*, an Oglebay vessel, was moored at a dock loading cargo in Silver Bay, Minnesota. Id. at 24. Among his various duties, Mr. Hughlett worked on the dock handling mooring cables in order to shift the vessel. Id. at 24-26. Mooring cables are controlled by mechanical winches on the deck and used to secure a vessel to the dock. The *Middletown* has six winches: one on the bow, one on the stern, and two pairs of winches each located near the forward and aft portions of the vessel. (John Roberts Depo, at 7-9; Leonard Cifelli Depo., at 9-10.) Each pair of winches is operated by a winch operator. (Cifelli Depo., at 13.) Each winch operator stands on a platform next to the winch between the two mooring cables, which are located behind him. He has several duties:

> During the shifting of the boat, he has to be watching the deck hand foremost. He has to be watching over his shoulder back at the winch to make sure that when he's paying out the cable that it's not getting fouled on the drum and he's watching the ship and he's also communicating with the mate on the radio as far as giving distance.

(Cifelli Depo., at 13). Mr. Hughlett was aware that the winch operator's attention would be divided between him and the winch. (Hughlett Depo., at 64-65.)

On this particular afternoon, while Mr. Hughlett was handling the mooring cables, he called up from the dock to the winch operator to request more slack and then pulled on the cable. Id. at 26. However, there was no slack and upon pulling, he experienced

2

a sharp pain in his back. Id. It was later determined that he had ruptured several disks in his back.

In response, Mr. Hughlett filed negligence and unseaworthiness claims against Oglebay. (Docket No. 1). In his Complaint, the plaintiff seeks compensatory damages for pain and suffering, humiliation, loss of earnings and earning capacity, hospital expenses, aggravation of a prior condition, loss of lifestyle, mental anguish, found, maintenance, cure, wages, and other fees and costs. Id. at 2.

In its motion for summary judgment, Oglebay argues that Mr. Hughlett has not set forth any evidence that it was negligent or that the *Middletown* was unseaworthy. Moreover, Oglebay maintains that Mr. Hughlett was the sole cause of his injury.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. Klepper v. First Am. Bank, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element

3

essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." Humenny, 390 F.3d at 904 (internal quotation omitted).

### III.  LEGAL ANALYSIS

**A.  Negligence Claim**

Mr. Hughlett contends that the winch operator aboard the *Middletown* was negligent by not providing slack in the mooring cable.  Oglebay argues that Mr. Hughlett has provided insufficient evidence to establish negligence and maintains that, instead, Mr. Hughlett was the sole cause of his injury.

The Jones Act provides a cause of action in negligence for "any seaman who shall suffer personal injury in the course of his employment."  46 U.S.C. § 688(a); see also Rannals v. Diamond Jo Casino, 265 F.3d 442, 447 (6th Cir. 2001);  Perkins v. Am. Elec. Power Fuel Supply, Inc., 246 F.3d 593, 598 (6th Cir. 2001).  By incorporating the Federal Employers' Liability Act ("FELA"), the Jones Act also "renders an employer liable for injuries negligently inflicted on its employees by its officers, agents, or

4

employees." Rannals, 265 F.3d at 448 (quoting Hopson v. Texaco, Inc., 383 U.S. 262, 263 (1966)). Employing common law negligence principles, the claimant must set forth sufficient evidence establishing "the breach of a duty to protect against foreseeable risks of harm." Perkins, 246 F.3d at 599 (quoting Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 437 (1999)). Although the "ordinary prudence" standard applies, the causation standard is relaxed so that the claimant "need only show that his employer's negligence is the cause, in whole or in part, of his injuries." Perkins, 246 F.3d at 598. Also, because the comparative negligence doctrine applies, any negligence on the part of the employee serves only to mitigate damages, "unless his negligence is the sole cause of his injuries." Id.

Here, Oglebay maintains there was no breach of duty and asserts that Mr. Hughlett was the sole cause of his injuries.[1] Upon review of the record and the applicable jurisprudence, the Court agrees.

According to Mr. Hughlett, when he came onto the deck to shift cable, he realized that he had insufficient slack to fit cable around the bit, evidenced by the fact that he called up to the winch operator for more slack. (Hughlett Depo., at 26). He also recognized that at that time the winch operator was looking at, and attending to, the winch rather than the plaintiff. Id. Knowing there was insufficient slack in the cable and finding that the winch operator was only attending to the winch, Mr. Hughlett's action of pulling hard on the mooring cable was the sole cause of his injuries. Id. at 26, 63-66. Thus, the Court concludes the plaintiff was the sole cause of his injuries.

---

[1] Oglebay does not dispute that Hughlett was a "seaman" for purposes of applying the Jones Act or that he was injured during the scope of his employment.

Mr. Hughlett asserts two arguments in response. First, he contends that standard procedures require the winch operator to initially provide slack on the deck. Thus, according to him, the winch operator was at least partially responsible for his injury. Mr. Hughlett is correct that upon a vessel's initial approach to the dock, standard procedures require that the winch operator provide slack on the deck. (Cifelli Depo., at 32). However, when Mr. Hughlett was injured, the *Middletown* was already moored and in the process of unloading. (Hughlett Depo., at 33-34). The plaintiff has not provided any evidence that standard procedures require the winch operator to provide initial slack on the deck when shifting cable on an already-moored vessel. Such a procedure would make little sense as all of the slack has already been released from the deck of the moored vessel down to the dock. (Cifelli Depo., at 29-30.) While the deck hand needs slack to pull cable around a bit, there is no evidence to suggest that the winch operator is required to provide initial slack on the deck once the ship is already moored. Rather, as the testimony suggests, the undertaking is a collaborative process:

> That's just something a deck had must - - you know, he pulls on something, if he's getting slack, he'll continue pulling. If he's not getting any more slack, he'll stop pulling. And I always promote communication between the watchman and the deck hand, but that not, you know, it's not always possible to say every little facet of the operation.

(Cifelli Depo., at 21-22). Further testimony indicates that the winch operator is not even required to provide slack upon the deck hand's request because that request does not take priority. Id. at 25-26. As Seaman Cifelli stated, "the deck hand follows the directives of the watchman." Id. at 25. Thus, Mr. Hughlett has not set forth any evidence establishing that the winch operator should have had initial slack on the deck.

Second, Mr. Hughlett contends the winch operator was negligent for watching the

6

winch rather than the plaintiff. However, it is undisputed that the winch operator is required to watch both the deck hand and the winch in order to prevent injuries. (Hughlett Depo., at 64-65; Cifelli Depo., at 13-14). It just so happens that when Mr. Hughlett asked for more slack and pulled the mooring cable, the winch operator was watching the winch. (Hughlett Depo., at 26). Mr. Hughlett has not established that in doing so, the winch operator was somehow negligent. To the contrary, paying close attention to the winch is integral to the procedure. (Cifelli Depo., at 13-14). Mr. Hughlett concedes as much in his deposition. (Hughlett Depo., at 64-65).[2]

Mr. Hughlett was aware there was insufficient slack in the mooring cable when he called for more slack and pulled it, all the while knowing that the winch operator was looking at the winch. In so doing, the Court concludes he was the sole cause of his injury. Accordingly, Oglebay's motion for summary judgment, with respect to the plaintiff's negligence claim, is granted. Perkins, 246 F.3d at 598.

**B.    Unseaworthiness Claim**

Relying upon the same facts as in his negligence claim, Mr. Hughlett also argues that the *Middletown* was unseaworthy.

"A ship owner is strictly liable for personal injuries caused by his or her vessel's 'unseaworthiness.'" Churchwell v. Bluegrass Marine, Inc., et al., 444 F.3d 898, 904 (6th Cir. 2006) (citing Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960)). A vessel is considered unseaworthy "if the vessel and its appurtenances are not 'reasonably fit for

---

[2] Hughlett also argues for the very first time in his sur-reply brief that his injuries were also caused by insufficient crew member assistance. However, he has not provided any evidence to support this claim; nor has he provided any evidence that the process of pulling mooring cable requires anything more than a deck hand and a winch operator.

their intended use.'"  Id. (Quoting Mitchell, 362 U.S. at 550).  "Even the misuse of properly functioning equipment may render a vessel unseaworthy if the misuse occurs at the direction of a superior."  Id. (Citing Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 726-28 (1967)).  Unseaworthiness is typically an issue for the jury.  Id.

Here, Mr. Hughlett has not provided any evidence that any equipment upon the *Middletown* was unseaworthy.  Rather, the plaintiff admits he was not aware of any problems with the number three winch in question when he was injured.  (Hughlett Depo., at 62).  To the extent that Mr. Hughlett contends the winch operator's conduct rendered the *Middletown* unseaworthy, the Court has already concluded the winch operator was not negligent in this case.  Accordingly, Oglebay's motion for summary judgment, with respect to the unseaworthiness claim, is granted.

## IV.  CONCLUSION

For the foregoing reasons, Oglebay's motion for summary judgment is granted.  This matter is hereby dismissed, with prejudice.

IT IS SO ORDERED.

                                               /s/Lesley Wells
                                       UNITED STATES DISTRICT JUDGE

Dated: 12 March 2007